IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAHERA PURNELL | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-3718 |
| | : | |
| CITY OF PHILADELPHIA | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**　　　　　　　　　　　　　　　　　　　**August 16, 2021**

Plaintiff Tahera Purnell brings this employment action against the City of Philadelphia, acting on behalf of its agency, the Philadelphia Department of Prisons (DOP). Purnell alleges the DOP discriminated against and harassed her on account of her sex. She claims the DOP violated Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). The City moved to dismiss Purnell's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Purnell's Complaint includes inadequate factual material to plead either a Title VII sexual harassment claim or a sex discrimination claim, the Court will grant the motion and dismiss the Complaint without prejudice and with leave to amend.

**BACKGROUND**[1]

Plaintiff Tahera Purnell is a female who identifies as lesbian. Defendant DOP hired Purnell as a Correctional Officer in 2011 and, approximately five years later, promoted her to the position of Correctional Sergeant. During her employment, Purnell began a romantic relationship with another female DOP Correctional Officer, Roneisha Corbitt. Corbitt's mother is a Captain at the DOP. During the relationship, Corbitt did not report to Purnell and the relationship violated no

---

[1] In evaluating a motion to dismiss, the court must "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation omitted).

workplace rules. In or around January 2017, the relationship between Purnell and Corbitt ended, but Corbitt wished to remain involved in Purnell's family life. On August 3rd, 2017, Corbitt arrived uninvited at a birthday party for Purnell's daughter and "started a scene." Pl.'s Compl. ¶ 17. During the confrontation, both Corbitt and Purnell were off-duty. Afterwards, Purnell learned Corbitt contacted the police concerning the incident at the party and subsequently filed a false workplace complaint against her. Purnell insists she had no contact with the police during or after the altercation with Corbitt.

The DOP requires its employees to report all contacts with the police. After learning about the confrontation from Corbitt, DOP staff began investigating Purnell for failure to report police contact. The ensuing investigation was conducted by friends of Corbitt's mother, and it resulted in Purnell's termination. Purnell pleads the DOP fired her because of her biological sex and sexual orientation. According to the Complaint, "submission to Corbitt's conduct" was an express or implied condition to avoid termination. Pl.'s Compl. ¶ 32. And Purnell was punished for "ending her relationship with Corbitt." *Id.* at ¶ 31. Purnell's punishment "was far more than the discipline leveled against several comparators." *Id.* ¶ 25. Purnell contends the DOP's decision to terminate her was motivated by her sex, sexual orientation, and her rejection of Corbitt's conduct. *Id.* ¶¶ 30, 41–42. And, according to the complaint, the reason for Purnell's termination offered by the DOP was pretext for unlawful discrimination. *Id.* ¶ 43.

On February 6, 2019, Purnell filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC). The charge accused the DOP of discriminating against Purnell on account of her race and sex. On July 13, 2020, Purnell filed the instant Complaint with the Philadelphia Court of Common Pleas. She alleged her termination was caused by sexual harassment (Count I), sex discrimination (Count

II), and retaliation (Count III) by the DOP under Title VII, the PHRA, and the PFPO.[2] Purnell seeks damages for loss of income and benefits, embarrassment, humiliation, and emotional distress. The DOP removed the case to this Court on July 27, 2020. ECF No. 1. On September 25, 2020, the DOP moved to dismiss the Complaint pursuant to Federal Rule Civil Procedure 12(b)(6). *See* Def.'s Mot. to Dismiss, ECF No. 5. In response, Purnell dropped Count III of her Complaint: retaliation. *See* Pl.'s Resp. Opp'n to Def.'s Mot. to Dismiss 6, ECF No. 7. The Court heard argument on the motion on June 17, 2021.

**DISCUSSION**

The Court will grant the DOP's motion to dismiss Purnell's sexual harassment claim (Count I) because Purnell has not pleaded facts showing either a quid pro quo offer or threat, or severe or pervasive discrimination. The Court will also grant the motion with respect to Purnell's sex discrimination claim because Purnell has not adequately pleaded her termination took place under circumstances giving rise to an inference of discrimination. To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation

---

[2] The standards for pleading Title VII claims and the corresponding PHRA and PFPO claims are the same. *See, e.g.*, *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) (construing Title VII and the PHRA "consistently"); *Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000) (noting that the legal standards for recovery under Title VII and the corresponding PFPO claims are analyzed in the same manner). Accordingly, the Court's analysis will be limited to Title VII's pleading requirements.

marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Univ. of the Scis.*, 961 F.3d at 203, (citing *Iqbal*, 556 U.S. at 678).

Plaintiffs may establish workplace sexual harassment in violation of Title VII through two theories. The first is a quid pro quo sexual harassment theory. The second is a hostile work environment sexual harassment theory. The Complaint alleges both.  Quid pro quo sexual harassment occurs when an employee's "job status evaluation, continued employment, promotion, or other aspects of career development" are conditioned upon the employee's favorable response to "sexual advances or demands." *Emmanuella Cherisme v. AIDS Care Grp.*, No. 15-6420, 2016 WL 3997237, at *3 (E.D. Pa. July 26, 2016) (quoting *Tomkins v. Pub. Serv. Elec. & Gas Co.*, 568 F.2d 1044, 1048–49 (3d Cir. 1977)) (internal quotation marks omitted). To withstand a Rule 12(b)(6) motion, a plaintiff alleging quid pro quo harassment must plead facts to show either (1) he/she submitted to sexual advances based on the quid pro quo offer or threat or (2) a harasser took tangible employment action based on refusal to submit to his/her sexual advances or demands, and (3) the harasser had workplace authority sufficient to carry out the quid pro quo offer or threat. *Id.* at *10.

Here, the Complaint does not plead Purnell's acquiescence to a sexual advance or demand. The claim is therefore based on Purnell's refusal to submit to the sexual advances or demands of a DOP employee having the power to adversely impact her career. Purnell pleaded she "was subjected to quid pro quo harassment and sexual harassment with a tangible employment action." Pl.'s Compl. ¶ 29. This need not be taken as true because it is conclusory; it reiterates Title VII's requirements for recovery as interpreted by the Third Circuit. *Cf. Doe v. Mercy Cath. Med. Ctr.*, No. 19-2734, 2021 WL 1157190, at *5 (3d Cir. Mar. 25, 2021) ("[Plaintiff's] vague references to

[defendant's] 'constantly' making sexual advances during her residency, with no further detail (what kind of advances? when?), do not support an inference that she was terminated because she failed to acquiesce to [defendant's] demands.").

The Complaint does not accuse anyone of making sexual advances toward or demands of Purnell at any time. Rather, the Complaint rests on allegations that Purnell's continued relationship with Corbitt and/or "submission to Corbitt's conduct" were express or implied conditions to avoid a job detriment. Pl.'s Compl. ¶¶ 31–32. The Complaint only mentions Corbitt's conduct insofar as she (1) attempted to remain involved in Purnell's family life, (2) appeared uninvited to a birthday party for Purnell's daughter where she started a scene in a parking lot, left, and contacted the police, and (3) filed a false workplace report against Purnell. *Id.* ¶¶ 16–17, 19, 22. Remaining in someone's family life is no sexual demand or advance.[3] Further, Purnell's Complaint omits a key fact required to establish quid pro quo harassment: that the DOP employee who made an offer to or threatened Purnell had sufficient workplace authority to stunt Purnell's career development. The demand—Purnell's "submission to Corbitt's conduct"—was not, according to the Complaint,

---

[3] This Court has found (and Purnell cites) no case where an offer or threat conditioned on a continued personal or familial relationship with another adequately pleads quid pro quo sexual harassment. Because it is not sexual in nature, Corbitt's demand of continued involvement in Purnell's family life alone is insufficient to plead sexual harassment under a quid pro quo theory. *Cf. Sims v. Peace of Mind Living Habilitative Servs.*, No. 2:19-CV-00413-CRE, 2020 WL 3965342, at *7 (W.D. Pa. June 5, 2020) (granting summary judgment for the defendant because demanding that an employee terminate a romantic relationship with another is not a sexual advance or demand for Title VII purposes); *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 565 (3d Cir. 2017) ("[u]nwelcome *sexual* advances, requests for *sexual* favors, or other verbal or physical actions *of a sexual nature* constitute quid pro quo sexual harassment . . . .") (emphasis added); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 28 (3d Cir. 1997) ("[Q]uid pro quo harassment requires a direct conditioning of job benefits upon an employee's submitting to *sexual* blackmail or the consideration of *sexual* criteria in work evaluations.") (emphasis added). Accordingly, Corbitt's demand of remaining involved in Purnell's family life cannot, itself, serve as the sexual advance or demand required to establish sexual harassment using a quid pro quo theory.

expressed or implied by any DOP employee with the power to adversely impact Purnell's employment. It is unreasonable to presume Corbitt, an officer, had authority over Purnell, a sergeant, to condition employment on acquiescence to any quid pro quo offer or threat by nature of her job description. Pl.'s Compl. ¶¶ 11, 14. The Complaint states only that friends of Corbitt's mother investigated a false accusation against Purnell. It does not accuse Corbitt's mother or those who conducted the investigation of conditioning Purnell's career development on sexual acts with themselves or Corbitt. During oral argument, Purnell argued Corbitt held the power to adversely impact her career development through her mother's actions. But in the context of Title VII quid pro quo sexual harassment, it is *the harasser*—not the harasser's mother—who must hold the power to adversely impact a plaintiff's employment. *Cf. Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 28 (3d Cir. 1997) ("Title VII quid pro quo sexual harassment generally requires that the harasser have authority to carry out the quid pro quo offer or threat.") (citations omitted); *Emmanuella Cherisme*, 2016 WL 3997237, at *4 (concluding that a Complaint was more susceptible to a Rule 12(b)(6) motion because it accused an employee other than the alleged harasser of terminating the plaintiff). Accordingly, Purnell's Complaint fails to adequately plead sexual harassment under a quid pro quo theory.

The Court turns next to whether Purnell has adequately pleaded sexual harassment under a hostile work environment theory. The Complaint contains insufficient factual allegations to establish a hostile work environment because the only adverse employment action it alleges, termination, ends the work environment completely. The Court will therefore dismiss Purnell's sexual harassment claim.

For a Title VII hostile work environment sexual harassment claim to succeed, a plaintiff-employee must show:

> (1) the employee suffered intentional discrimination because of his/her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability.

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citations omitted). The Complaint accuses Corbitt of filing a false workplace complaint against Purnell, which—after being investigated by friends of Corbitt's mother—resulted in Purnell's termination. Pl.'s Compl. ¶¶ 22–24, 33, 35–36. To adequately plead a hostile work environment claim, the Complaint must therefore include facts to support that Purnell was exposed to "severe or pervasive" discrimination within the work environment. *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017). Even "an extreme isolated act of discrimination can create a hostile work environment." *Id.* at 265. But the Complaint alleges a single adverse employment action that cannot itself create a hostile work environment: Purnell's termination. Pl.'s Compl. ¶ 33. Courts in this district have repeatedly held that termination alone cannot support a claim of hostile work environment sexual harassment. *See, e.g.*, *Roberts v. Health Partners Plans, Inc.*, No. 17-0297, 2017 WL 3310691, at *5 n.4 (E.D. Pa. Aug. 3, 2017) (collecting cases); *see also Morozin v. Phila. Hous. Auth*., No 18-2174, 2019 WL 3824228, at *6 (E.D. Pa. Aug. 13, 2019). This is because discharge ends the work environment altogether. *Roberts*, 2017 WL 3310691 at *5.

Besides termination, the Complaint does not include facts to support that Purnell was exposed to severe or pervasive discrimination within the work environment. Paragraphs 22 and 24 of the Complaint state Corbitt fabricated a workplace complaint against Purnell, which friends of Corbitt's mother investigated. Pl.'s Compl. ¶¶ 22–24. But the Complaint does not provide detail on how or if Purnell's work environment changed during the investigation. It does not mention the severity or pervasiveness of these actions regarding either (1) the work environment they created or (2) how they impacted Purnell's work-performance. That is, the Complaint omits allegations

7

reflecting the dynamic of the working environment itself.[4] For this reason, the Court will grant the DOP's Motion to Dismiss Count I of the Complaint.[5]

The Court will also dismiss Count II of the Complaint because Purnell's claim of sex discrimination is plausible on its face. Title VII makes unlawful employer discrimination against an employee, "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2). To survive a motion to dismiss, the plaintiff must plead facts sufficient to raise a reasonable expectation that discovery will reveal the plaintiff (1) is a member of a protected class, (2) was qualified for the position which she held, (3) suffered an adverse employment action which

---

[4] Without citing any other authority, Purnell argues the holding in *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011) allows recovery when a supervisor creates a hostile work environment because Purnell refused to maintain a relationship with that supervisor's daughter. Pl.'s Resp. Opp'n to Def.'s Mot. to Dismiss 3–4, ECF No. 7. This argument is not compelling in the context of sexual harassment claims for several reasons. First, *Thompson*'s holding was limited on its own terms to Title VII retaliation claims. 562 U.S. at 174. Second, the Court expressly noted Title VII's antiretaliation provision prohibits a broader range of conduct than its substantive provisions. *Id.* ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)) (internal quotation marks omitted). Here, Purnell has withdrawn her retaliation claim and relies only on Title VII's substantive provisions. Pl.'s Resp. Opp'n to Def.'s Mot. to Dismiss 6, ECF. No 7.

[5] The DOP also argues for dismissal because the Complaint contains no basis for employer liability. Def.'s Mot. to Dismiss 7, ECF No. 5. An employer is liable for hostile work environment sexual harassment when it "knew or should have known of the harassment and failed to take prompt remedial action." *Bonenberger*, 132 F.3d at 26. This standard is met when: (1) the harassment is committed within the scope of employment, meaning that the harasser had authority over the plaintiff based on his/her job description; (2) the employer negligently or recklessly failed to train, discipline, fire, or take remedial action upon receiving notice of the harassment; or (3) the harasser relied upon his/her authority or was aided in harassing an employee by the agency relationship. *Id.* Regarding employer liability, the Complaint alleges Purnell's termination resulted from an investigation by Sgt. Green and Lt. Saunders. Pl.'s Compl. ¶ 24. It is plausible that Saunders, a Lieutenant, had authority over Purnell, a Sergeant. Accordingly, the Complaint adequately pleads employer liability.

was (4) taken under circumstances giving rise to an inference of discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999).

The DOP does not dispute Purnell is a member of a protected class. Nor does the DOP dispute Purnell was qualified for her position or that termination is an adverse employment action. The DOP's motion thus hinges on whether the facts in the Complaint raise a reasonable expectation that discovery will show termination occurred under circumstances giving rise to an inference of discrimination. *Jones*, 198 F.3d at 410–11. An inference of discrimination can flow from either of two theories. *Crumpton v. Potter*, 305 F. Supp. 2d 465, 472 (E.D. Pa. 2004). The first is a disparate impact theory, which requires the plaintiff to show that a facially neutral policy caused substantial adverse impact to a protected group. *Id.* The second is a disparate treatment theory. *Id.* A disparate treatment theory requires that an individual's sex was a but-for cause of his/her disparate treatment. *Starnes v. Butler Cty. Ct. of Common Pleas*, 971 F.3d 416, 426–27 (3d Cir. 2020) (citing *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739–40 (2020)). Because the Complaint does not allege that any neutral policy disadvantaged a protected class, Purnell's claim rests on a disparate treatment theory.

Under a disparate treatment theory, an inference of discrimination "is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII." *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990).

The Complaint mentions "several comparators" whom the DOP disciplined less harshly than Purnell. Pl.'s Compl. ¶ 25. To plead an inference of discrimination, these comparators must be similarly situated as to Purnell. To determine if another employee is similarly situated to the plaintiff, courts consider: (1) whether the employees had the same supervisor; (2) whether the

9

employees were subject to the same standards; and (3) whether the employees "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)) (internal quotation marks omitted).

In this case, that means either a male employee or a heterosexual female employee who denies having contact with the police must have been retained after a DOP investigation determined that he/she failed to report police contact or the DOP replaced Purnell with a male or a heterosexual female. The Complaint alleges that "[t]he discipline leveled against Plaintiff was far more severe than the discipline leveled against several comparators." Pl.'s Compl. ¶ 25. It also asserts that Purnell's biological sex and/or sexual orientation were motivating factors in the decision to terminate her. *Id.* ¶ 41–42. As a preliminary matter, the allegations that sex or sexual orientation were motivating factors in the decision to terminate Purnell are conclusory and thus not entitled to a presumption of truth. *See Vanderveer v. FedEx Ground Packaging Sys., Inc.*, No. 16-1979, 2017 WL 467631, at *5 (E.D. Pa. Feb. 3, 2017) (classifying a plaintiff's assertions that she "was treated in a disparate and illegal manner by virtue of her gender and race" and "was subjected to discriminatory actions . . . by virtue of her race and gender" as "wholly conclusory"). Moreover, the Complaint does not state whether the "comparators" had the same supervisors, were subject to the same standards, or engaged in the same conduct as Purnell. Nor does the Complaint include the biological sex, sexual orientation, or any other facts about the "comparators."

Courts have consistently granted motions to dismiss when a complaint does not list specific facts about comparators. *See, e.g.*, *Susko v. Weidenhammer Sys. Corp.*, No. 20-6543, 2021 WL 2451614, at *7 (E.D. Pa. June 16, 2021) (granting motion to dismiss where plaintiff failed to assert

enough facts to establish she was similarly situated to a named comparator); *Boone v. SEPTA.*, No. 14-1373, 2014 WL 6861581, at *4 (E.D. Pa. Dec. 5, 2014) (citing *Wooler v. Citizens Bank*, 274 F. App'x 177, 180–81 (3d Cir. 2008)) (dismissing a Title VII sex discrimination complaint under Rule 12(b)(6) because it did not allege "any facts regarding individuals . . . with whom we can compare Plaintiff"). Beyond conclusory allegations, Purnell's Complaint does not include any facts that establish the unnamed comparators were similarly situated to Purnell. Purnell has therefore failed to plead an inference of discrimination, and the Court will dismiss Purnell's sex discrimination claim.

Having dismissed Purnell's Complaint, the Court must consider whether to grant Purnell leave to file an amended complaint. A court may grant leave to amend a pleading under Rule 15(a)(2), which instructs a court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court can deny leave to amend, however, when the amendment would be futile. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). An amendment is futile when it "could not withstand a renewed motion to dismiss." *Id.* (internal quotations omitted). The deficiencies with Purnell's Title VII claims are factual and Purnell has not previously had the opportunity to amend her Complaint. The Court therefore grants Purnell leave to file an amended complaint to address the deficiencies identified in this Memorandum.

**CONCLUSION**

In sum, the Court will grant the DOP's motion to dismiss Purnell's Complaint without prejudice and with leave to amend. For Purnell's sexual harassment claim, the Complaint's factual allegations establish neither a quid pro quo offer or threat nor severe or pervasive discrimination.

With respect to Purnell's sex discrimination claim, the Complaint fails to allege Purnell's termination took place under circumstances giving rise to an inference of discrimination.

An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.