IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAHERA PURNELL | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-3718 |
| | : | |
| CITY OF PHILADELPHIA | : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                                                              **August 16, 2022**

In this employment action Plaintiff Tahera Purnell brings suit against the Defendant City of Philadelphia, alleging the Philadelphia Department of Prisons (DOP) violated Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). This Court previously granted the City's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Purnell filed an Amended Complaint. The City now moves to dismiss Count I, and the portions of Counts IV and V that pertain to Plaintiff's claim of sexual harassment.[1] Because Purnell has failed to plead sufficient facts to support a sexual harassment claim under either a quid pro quo or hostile work environment theory, the Motion to Dismiss is granted.

## BACKGROUND[2]

In January 2011, Purnell was hired by Defendant DOP as a Correctional Officer. She was promoted to Sergeant in or about May 2016. Pl's Am. Compl. ¶¶ 9-11. During her employment,

---

[1] The Court acknowledges the Plaintiff's Amended Complaint is misnumbered and there are only four actual counts. Nonetheless, the Court preserves the numbers Plaintiff (and Defendants) use for consistency. Defendant did not move to dismiss Count II (Sex Discrimination) or the portions of Counts IV and V that pertain to Purnell's claims of sex discrimination.

[2] In evaluating a motion to dismiss, the court must "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation omitted).

1

Purnell engaged in a sexual relationship with Roneisha Corbitt, another Correctional Officer. Pl's Am. Compl. ¶ 14. Corbitt's mother, Erica Patterson, is a Captain with the Prisons System. Pl's Am. Compl. ¶ 15.

In January 2017, after Corbitt cheated on Purnell with a former inmate who served time for harming a child, their relationship ended. Pl's Am. Compl. ¶¶ 16-18. Purnell moved out of the home she had previously shared with Corbitt, and took her daughter with her. Pl's Am. Compl. ¶ 20. While Corbitt wanted to remain involved in Punell's family life, Purnell absolutely did not share the sentiment. Pl's Am. Compl. ¶¶ 17-19.

Sometime around May 2017, Capt. Patterson called Purnell herself and asked why Purnell wouldn't let Corbitt stay in Purnell's daughter's[3] life. Pl's Am. Compl. ¶ 21. Purnell informed Patterson about Corbitt's new partner's previous conviction for harming children. *Id.* In response, Patterson told Purnell she "should be nice" because Purnell was recently promoted to Sergeant.

In July 2017, Corbitt emailed Purnell at work, saying "tell [Purnell's daughter] happy birthday. I heard you're having a birthday party" which Purnell reported as a violation of Prison Rules. Pl's Am. Compl. ¶¶ 25-27. Unfortunately, the emails were deleted by a person with authority to enter Purnell's emails. Pl's Am. Compl. ¶ 27. Corbitt also called Purnell to ask why she was not invited to her daughter's birthday party. Pl's Am. Compl. ¶ 26.

On August 2, 2017, Corbitt and her new partner went to a bar near the prison. While there, Corbitt confronted Purnell about Purnell's daughter's birthday party. Purnell again told Corbitt she was not invited, and Corbitt left the bar. Pl's Am. Compl. ¶ 28. The next day, Purnell's daughter celebrated her birthday without incident. Pl's Am. Compl. ¶ 29. Corbitt did not attend.

---

[3] The Amended Complaint refers to Purnell's child both as Purnell's daughter and son. For clarity and consistency, the Court refers to Purnell's child as her daughter.

About a month later, Corbitt alleged Purnell was involved in an incident involving contact with the police and with failing to report that contact. Pl's Am. Compl. ¶¶ 30-33. Purnell asserts that she never had any contact with the police and the complaint was fabricated. Pl's Am. Compl. ¶¶ 30-33. After Capt. Patterson's friends investigated the complaint and testified to Central Command, Purnell was fired. Pl's Am. Compl. ¶¶ 35-40. Other sergeants who were either straight men or straight women, were not fired for similar infractions. Pl's Am. Compl. ¶ 34.

**DISCUSSION**

The Court will grant DOP's Motion to Dismiss Count I and the portions of Counts IV and V that pertain to Purnell's claims of sexual harassment[4] because Purnell has failed to plead facts showing either a quid pro quo offer or threat of a sexual nature, or a hostile work environment . To survive a motion to dismiss, a complaint must include enough factual allegations, accepted as true, to state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain detailed factual allegations but must contain something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* As previously stated by this Court, the plausibility standard requires a pleading to show more than a sheer possibility that a defendant has acted unlawfully and that the claim permits a reasonable inference the defendant is liable for the alleged misconduct. Mem. Regarding Mot. to Dismiss Original Compl., ECF No. 10, at 3-4.

---

[4] Title VII, PHRA, and PFPO claims have the same pleading standard. *See, e.g.*, *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) (construing Title VII and the PHRA "consistently"); *Joseph v. Cont l Airlines, Inc.*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000) (noting that the legal standards for recovery under Title VII and the corresponding PFPO claims are analyzed in the same manner). Accordingly, the Court's analysis will be limited to Title VII's pleading requirements.

A violation of Title VII can be brought on two theories: quid pro quo sexual harassment or hostile work environment. The Plaintiff alleges both in the amended complaint. Quid pro quo sexual harassment occurs when aspects of an employee's career are conditioned upon the employee's favorable response to *sexual advances*. *Emmanuella Cherisme v. AIDS Care Grp.*, No. 15-6420, 2016 WL 3997237, at *3 (E.D. Pa. July 26, 2016) (quoting *Tomkins v. Pub. Serv. Elec. & Gas Co.*, 568 F.2d 1044, 1048–49 (3d Cir. 1977)) (emphasis added) (internal quotation marks omitted). As this Court previously explained, "[t]o withstand a Rule 12(b)(6) motion, a plaintiff alleging quid pro quo harassment must plead facts to show . . . (2) a harasser took tangible employment action based on refusal to submit to his/her *sexual* advances or demands, and (3) the harasser had workplace authority sufficient to carry out the quid pro quo offer or threat. *Id.* at *10."[5] Mem. Regarding Mot. to Dismiss Original Compl., at 4 (citing *Emmanuella Cherisme*, 2017 WL 3997237, at *10) (emphasis added).

Purnell has failed to plead facts sufficient to show Capt. Patterson made *sexual* advances or demands. Purnell alleges she has cured this deficiency by stating:

> "[i]n order to keep her job, Plaintiff had to tolerate interactions with Corbitt after Corbitt cheated on Plaintiff. Am. Comp. ¶ 17. Plaintiff not only had to see Corbitt and Corbitt's new sexual partner, Plaintiff had to get over the fact that the new sexual partner was a former inmate who was convicted of a crime harming children. *Id.* ¶¶ 17-18. . . . Thus, when Capt. Patterson called Plaintiff and said she "should be nice" because Plaintiff was recently promoted to Sergeant, this was a clear *quid pro quo* demand of a sexual nature. This is sexually demeaning and entirely inappropriate."

*See* Pl.'s Opp. ECF No. 17, at 4. This does not constitute a sexual demand or advance. Despite Purnell's arguments to the contrary, the statement "be nice" also does not constitute a demand or

---

[5] As in the original complaint, Purnell does not allege she submitted to sexual advances based on the quid pro quo offer or threat. Consequently, one method of meeting the pleading standard is omitted in the quote herein and not discussed in this memorandum.

4

threat from Capt. Patterson to give into a sexual demand from a third party (Corbitt). Just because Purnell had to "get over the fact that [Corbitt's] new sexual partner was a former inmate," does not, by itself, constitute a quid pro quo demand of a sexual nature.

As this Court previously explained, an offer or threat conditioned on a continued personal or familial relationship with another is not adequate to plead quid pro quo sexual harassment.[6] The new facts provided in the Amended Complaint do not change the request for a continued familial relationship into a sexual demand or advance.

While the Court sympathizes with Purnell's situation, having a familial or personal relationship with an ex-partner after a difficult breakup does not constitute quid pro quo harassment, especially where the ex-partner (Corbitt) did not express or pressure Purnell to renew their sexual relationship. Purnell was not being asked to engage in a sexual relationship with *either* Capt. Patterson or Corbitt. Pl.'s Opp. ECF No. 17, at 4. Such an attenuated claim does not fit into the definition of quid pro quo harassment.

In support of her Title VII claim, Purnell also alleges she suffered from a hostile work environment. Under a hostile work environment theory, a plaintiff must show:

> (1) the employee suffered intentional discrimination because of his/her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability.

---

[6] *Cf. Sims v. Peace of Mind Living Habilitative Servs.*, No. 2:19-CV-00413-CRE, 2020 WL 3965342, at *7 (W.D. Pa. June 5, 2020) (granting summary judgment for the defendant because demanding that an employee terminate a romantic relationship with another is not a sexual advance or demand for Title VII purposes); *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 565 (3d Cir. 2017) ("[u]nwelcome sexual advances, requests for sexual favors, or other verbal or physical actions of a sexual nature constitute quid pro quo sexual harassment . . . .") (emphasis added); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 28 (3d Cir. 1997) ("[Q]uid pro quo harassment requires a direct conditioning of job benefits upon an employee's submitting to sexual blackmail or the consideration of sexual criteria in work evaluations.") (emphasis added).

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). This analysis requires a totality of the circumstances analysis, including: "the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Castleberry v. STI Grp.*, 863 F.3d 259 (3rd Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Here, Purnell alleges she was subject to a hostile work environment because she suffered the "severe, humiliating, and interfering act" of being fired. *See* Pl.'s Opp at 9. While one extreme isolated act of discrimination can create a hostile work environment, termination alone cannot sufficiently support a claim of hostile work environment sexual harassment. *See, e.g. Roberts v. Health Partners Plans, Inc.*, No. 17-0297, 2017 WL 3310691, at *5 n.4 (E.D. Pa. Aug. 3, 2017)(collecting cases); *see also Morozin v. Phil. Hous. Auth.*, No. 18-2174, 2019 WL 3824228, at *6 (E.D. Pa. Aug. 13, 2019).

Besides termination, the Amended Complaint still fails to include facts sufficient to support a theory of hostile work environment. The Amended Complaint alleges: Purnell received personal emails at work which were later deleted after she reported them, Pl's Am. Compl. ¶¶ 26-27; received one phone call from Capt. Patterson where she was told to "be nice" to Corbitt, Pl's Am. Compl. ¶39; and knew she would be fired because of Corbitt's false complaint and learned this during the disciplinary hearing. Pl's Am. Compl. ¶¶ 28-38. *See also* Pl.'s Opp. at 9.

Receiving one phone call from Capt. Peterson during work hours where she was told to "be nice," receiving a few emails at work from Corbitt about her child's birthday party, and learning that she was going to be fired at a disciplinary hearing do not together plausibly give rise to the inference that Purnell experienced severe or pervasive discrimination based on her sex. Pl's Am. Compl. ¶ 21, 39.

As we previously explained, "remaining in someone's family life is no sexual demand or advance." None of these facts claim any more than a request to remain in someone's family life. Mem. Regarding Mot. to Dismiss Original Compl., at 5, 7-8. Purnell has failed to plead facts sufficient to support a sexual harassment claim under either a quid pro quo or hostile work environment theory. Accordingly, Defendant's Motion to Dismiss Count I is granted.

**Counts IV and V**

The standards for Count IV and V (PHRA and PFPO claims) mirror those set forth by Title VII, and the above analysis is incorporated herein. Accordingly, the portions of Counts IV and V pertaining to Purnell's sexual harassment claims are dismissed. The portions of counts IV and V pertaining to Purnell's sex discrimination claim remain.

**CONCLUSION**

The Court will grant Defendant's Motion to Dismiss Count I and portions of Counts IV and V of Purnell's Amended Complaint because Plaintiff has not pleaded adequate facts showing sexual harassment. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez,
Juan R. Sánchez, C.J.